No. 87-171

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

RONALD J. MASTERS,

        Claimant and Appellant,

    -vs-

DAVIS LOGGING,

        Employer,

   and

STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bothe Law Firm; David W. Lauridsen, Columbia Falls, Montana

    For Respondent:

        Warden, Christiansen, Johnson & Berg; Gary R. Christiansen, Kalispell, Montana

---

Submitted on Briefs: July 23, 1987

Decided: October 1, 1987

Filed: OCT 1 - 1987

Ethel M. Harrison
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Ronald Masters, appeals a decision of the Workers' Compensation Court denying his claim for benefits and reasonable costs and attorney's fees. Appellant alleges the court erred in holding his claim barred for failure to notify the employer of his injury within 60 days. We affirm.

The issues presented on appeal are:

1. Whether there is substantial credible evidence to support the Workers' Compensation Court's decision that appellant's claim for benefits is barred for failing to notify his employer as required by § 39-71-603, MCA?

2. Whether the appellant is entitled to reasonable costs and attorney's fees?

We find that the first issue is determinative.

Davis Logging was enrolled under compensation plan no. 3 of the Workers' Compensation Act and was insured by the State Compensation Insurance Fund. Davis Logging was a small logging company owned and operated by Billy Joe and Linda Davis.

Masters has been a friend of the Davis' family for 15 years. In May, 1985, Masters accepted employment as sawyer for Davis Logging in an area approximately 40 miles into the back country. He was injured while so employed.

On May 23, 1985, Masters was falling timber on a steep hillside. At that time, he encountered a tree with a large snag protruding from the main stalk of the tree. Masters ascended the hill to a point above the snag and began sawing it. While sawing, the snag detached from the tree and swung up the hill, striking Masters between the legs. The force of

the impact hurled him up the hill approximately 15 to 20 feet, where he landed on his back.

Masters immediately felt numb from the waist down. He rose to his feet and examined himself. Masters' feet were tingling and his legs were numb. He also suffered back pain, small cuts and scrapes. Masters returned to work after resting for ten minutes and discussing the accident with a co-employee who happened upon the scene.

The next morning, Masters was so stiff and sore he "[didn't] know if he could make it." He went to work anyway and continued working with pain until he ceased his employment with Davis Logging on June 22, 1985. At that time, Masters returned to the Libby area where he continued to work as a sawyer with Decker Logging until February, 1986.

Although Masters' ability to work was impaired and the pain in his back progressively worsened, he did not immediately seek medical attention. In July, 1985, he began seeing a local chiropractor on a regular basis for back pain treatments. While the chiropractor took several x-rays, he failed to diagnose the injury. The chiropractic treatments continued without success until approximately January, 1986. At that time, Masters' continued pain forced him to seek the assistance of his family physician, Dr. Brus. Dr. Brus referred him to a back specialist. Dr. Laidlaw, the back specialist, diagnosed a ruptured disk on March 27, 1986. Masters personally paid $3,500 for medical care to this point.

During the period that Masters continued to be employed by Davis Logging, Billy Joe Davis, the owner, was at the jobsite at least part of the time. Masters did not inform Davis of the injury. In addition, Masters was aware of the Davis' location after he terminated his employment.

Nevertheless, Davis was not notified of the injury until April 16, 1986, 11 months after the injury.

Masters explains his failure to notify his employer in two ways. At trial, he testified he "didn't know the severity of [his] injury." In his deposition, he states:

> . . . I had paid for everything out of my pocket which I wasn't going to turn it in because Bill there, he is a real good personal friend of mine and I didn't figure that I wanted to raise his insurance or cause any problems with Workman's Comp so I was just going to pay for everything myself.

There is no allegation or evidence that the employer did anything that in anyway impeded Masters' ability to provide notice.

The Montana Workers' Compensation Act provides a set of rules designed to effectuate a balance between the competing interests of workers and employers. Section 39-71-603, MCA, reflects the employer's interest in prompt notification of claims. It provides:

> No claim to recover benefits under the Workers' Compensation Act, for injuries not resulting in death, may be considered compensable unless, within 60 days after the occurrence of the accident which is claimed to have caused the injury, notice of the time and place where the accident occurred and the nature of the injury is given to the employer or the employer's insurer by the injured employee or someone on the employee's behalf. Actual knowledge of the accident and injury on the part of the employer or the employer's managing agent or superintendent in charge of the work upon which the injured employee was engaged at the time of the injury is equivalent to notice.

The provisions of the notice statute are "mandatory and compliance with its requirements is indispensable to the maintenance of a claim for compensation." Bender v. Roundup Mining Company (1960), 138 Mont. 306, 309, 356 P.2d 469, 470. Hunt v. Sherwin Williams Company (1981), ___ Mont. ___, 624

- 4 -

P.2d 489. Masters, by his own admission, failed to notify his employer within 60 days of his injury. He contends, however, that the notice requirement of § 39-71-603, MCA, was satisfied because he notified his employer within 60 days of discovering the extent of his injury. We disagree.

In Bowerman v. Employment Security Division (Mont. 1983), 673 P.2d 476, 40 St.Rep. 2062, we recognized that latent injuries presented a unique situation which often resulted in substantial injustice to the injured worker. In Bowerman, the claimant promptly notified his supervisor that he had fallen into a stairwell after slipping on a pencil. The injury to his back and head did not fully manifest itself until after the statute of limitation had run, however. An examination of the rationale behind the statute of limitation, § 39-71-601, MCA, revealed that latent injuries are not the type of evil sought to be prevented.

> Statutes of limitation generally proceed on the theory that a man forfeits his rights only when he inexcusably delays assertion of them . . . But [with latent injuries] no amount of vigilance is of any help. The limitations period runs against a claim that has not yet matured; and when it matures it is already barred.

673 P.2d at 478, 40 St.Rep. at 2065, citing 3 Larson, Workmen's Compensation Law, § 78.42(b) at 15-226. Consistent with principles of equity and the Court's duty to liberally construe the provisions of the Workers' Compensation Act, we held that the statutory period "does not begin to run until the claimant, as a reasonable [person], should recognize the nature, seriousness and probable, compensable character of his latent injury." 673 P.2d at 479, 40 St.Rep. at 2065.

The Workers' Compensation Court, in Hamilton v. Combustion Engineers, Inc., WCC No. 8307-2091, decided July 27, 1984, extended the Bowerman rationale to the notice

provision of § 39-71-603, MCA. Masters requests that this Court do likewise. Assuming we were inclined to do so, the facts of this case preclude the application of Bowerman, supra.

A review of the facts indicates that a reasonable person should have been aware that a serious injury had been sustained. Masters testified that he suffered pain which impaired his ability to work and that the pain progressively increased. The pain caused discomfort to the degree that Masters felt it was necessary to engage the services of a chiropractor on a regular basis. These facts do not indicate a latent injury.

Masters did not suffer minor or sporadic pain, however. It appears that he consciously chose to forego his rights under the Workers' Compensation Act and shoulder the burden of the injury himself because of his friendship with his employer. Such a decision does not indicate a latent injury.

We therefore hold that the decision of the Workers' Compensation Court is affirmed. We offer no opinion as to the applicability of the Bowerman, supra, rationale to the notice provision of § 39-71-603, MCA.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices