No. 94-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DONNA TURJAN,

      Petitioner and Appellant,

  v.

VALLEY VIEW ESTATES,

      Employer,

    and

ROYAL INSURANCE,

      Insurer and Respondent.

**FILED**

AUG 04 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court
               The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

           Thomas C. Bulman, Bulman Law Associates,
           Missoula, Montana

        For Respondent:

           P. Mars Scott, Mulroney, Delaney & Scott,
           Missoula, Montana


               Submitted on Briefs:  April 20, 1995

                       Decided:  August 4, 1995

Filed:

_____
      Clerk

Justice William E. Hunt, Sr. delivered the opinion of the Court.

Appellant Donna Turjan appeals from a November 1993 order of the Workers' Compensation Court denying her claim for failure to report an injury within the time prescribed by statute. We affirm.

Appellant raises the following issue on appeal:

Is the one-year time limit for filing a written workers' compensation claim under § 39-71-601, MCA (1985), and the 60-day time limit for giving an employer notice of injury under § 39-71-603, MCA (1985), tolled while claimant is receiving benefits under a prior claim?

Appellant was employed at Valley View Estates, a nursing home, from September 1986 through April 1987. On September 16, 1986, appellant injured her lower back and right shoulder while lifting a patient with a co-worker. She reported the injury to her supervisor, Bonnie Hicks. Appellant filled out a Valley View Accident Investigation Report and Valley View filed a workers' compensation claim on appellant's behalf. Appellant received treatment for this injury from Dr. Fuhrman. At the time of this workers' compensation claim, Valley View's insurer was Industrial Indemnity and its claims were adjusted by Crawford & Company Adjustors. Industrial covered the September 1986 workers' compensation claim. In January 1987, they began payment of medical costs associated with appellant's back injury. Beginning January 1, 1987, Valley View's insurer was Royal Insurance. Royal's claims were adjusted by General Adjustment Bureau.

On April 21, 1987, appellant was again lifting a patient and felt a sharp pain in her lower back. Appellant claims that she told Connie Strong, an employee at Valley View, about the incident and that she filled out a Valley View accident report for Strong to give to Hicks. Appellant initially claimed that Strong was her supervisor, but later testified that Hicks was her supervisor. Strong disputes appellant's testimony and testified that she does not remember appellant either telling her anything about the incident, or giving her a completed Valley View accident report for the April 1987 incident. Strong also testified that she was not appellant's supervisor. Appellant returned to Dr. Fuhrman and he instructed her that she was restricted from any work. He found that she had new symptoms and that she was "worse" in reference to her September 1986 injury. Appellant delivered two doctor's notes to this effect, dated April and June 1987, to Hicks at Valley View. Appellant failed to tell Hicks of the April 1987 incident, and failed to fill out a Valley View accident report when she twice delivered Dr. Fuhrman's notes.

After learning that appellant would not be returning to work, Valley View called Industrial to report appellant's separation from work due to her September 1986 back injury. Since appellant's injury occurred during Industrial's coverage period, they were liable. At Industrial's request, Crawford called appellant on April 30, 1987, to interview her about the circumstances of her September 1986 injury. Crawford called as a result of her

April 1987 separation from employment.  After discussion of the September 1986 injury, the following dialogue took place:

Crawford:  Mmmhmm.  Okay.  And now it's [injury] apparently started to cause you more problems recently here?

Appellant:  Uh, yea.  It was, it's been coming off and on ever since I injured it, but boy, when she put me back on afternoon shift, she put me on the worse wing that she could have.  And that's when there's only two girls lifting all those heavy people all night long.

Crawford:  Mmmhmm.

Appellant:  Get em up and then you got [sic] put them on the bed and potty them.

Crawford:  Mmmhmm

Appellant:  And that's, that's when it really started aching.

Crawford:  Okay.

Appellant:  I got a sharp pain and then uh I went to sit down for a couple of hours in the dining room trying to ease the pain and no matter what I did, I couldn't get rid of the pain.  So I called the doctor [Fuhrman] the next day.

Crawford:  Mmhmm.

Appellant:  Oh, this was midnight and I called the doctor the next day and I, uh, I, he, he wasn't in but the nurse was and she ordered me some muscle relaxers to relieve the pain.

Crawford initiated bi-monthly benefits to appellant under the September 1986 workers' compensation claim under Industrial's coverage.  Royal, the insurance carrier in April 1987, was not notified of an April 1987 injury until April 1993.

Sometime in 1987, appellant retained an attorney.  The representation included appellant's September 1986 workers'

compensation claim and continued until December 1992. Appellant received benefits from Industrial through June 1989. After those benefits ended, she entered into litigation with Industrial concerning her September 1986 claim. The first reference to a separate injury occurring in April 1987 was in the July 1992 deposition of appellant by Industrial. She stated that she filed an incident report, or a workers' compensation claim, for the April 1987 incident. Her attorney could not find an incident report and was unsure that a workers' compensation claim was ever filed. Appellant settled with Industrial in December 1992 for the September 1986 injury and for the April 1987 incident and received a lump sum payment. Industrial accepted liability for the September 1986 injury, but disputed liability for the April 1987 incident.

Appellant filed a workers' compensation claim for the April 1987 incident through her second and current attorney in April 1993. A trial in the Workers' Compensation Court took place on January 18, 1994. The court refused to toll the statutory time limits requiring notice of an injury to employer within 60 days and requiring the filing of a workers' compensation claim within one year. Appellant appeals from that judgment.

ISSUE

Is the one-year time limit for filing a written workers' compensation claim under § 39-71-601, MCA (1985), and the 60-day time limit for giving an employer notice of injury under

5

§ 39-71-603, MCA (1985), tolled while claimant is receiving benefits under a prior claim?

We have two jointly employed standards of review for Workers' Compensation Court decisions. One is a review of the findings of fact to determine if they are supported by substantial credible evidence, and the other is a review of the conclusions of law to determine whether or not the law is interpreted correctly. Caekaert v. State Compensation Mutual Ins. Fund (1994), 268 Mont. 105, 111, 885 P.2d 495, 498.

The controlling statutes require workers' compensation claims to be filed in writing within 12 months of the date of injury. They authorize employers, insurers, and the division to receive these written claims. Section 39-71-601(1), MCA (1985). An employee is required to give notice to the employer within 60 days of the injury. Section 39-71-603, MCA (1985).

Appellant argues that she was lulled into not filing a second workers' compensation claim for the April 1987 incident because she began to receive temporary total disability benefits shortly after her conversation with Industrial's claims adjuster, Crawford. She argues that her telephone conversation with the adjuster should have alerted him that she had a second injury in April 1987. Appellant asserts that Valley View should have known from her conversation with Crawford that a separate workers' compensation claim needed to be filed for her April 1987 incident. She argues that it was reasonable for her to assume that the proper claim for

her April 1987 injury was her 1986 claim because that was the claim under which she began receiving temporary total disability benefits.

Appellant testified that she notified Valley View on the day of the April 1987 injury through Strong. Appellant claimed that she filled out a Valley View Accident Investigation Report and that she gave it to Strong to give to Hicks, appellant's supervisor. Appellant argues that Valley View had imputed knowledge of a second injury in April 1987 through her conversation with Crawford.

The Workers' Compensation Court found that appellant was familiar with Valley View's procedures for filling out accident reports and for filing workers' compensation claims. She filed a previous workers' compensation claim for her September 1986 injury. Doctor Fuhrman's note indicated new symptoms after April 1987, but did not indicate that a new, specific incident had precipitated the new symptoms. He noted that she was "worse," indicative of a decline in an existing condition. Appellant did not report her April 1987 incident to Strong, or to her supervisor. There was no written accident report filed and Strong had no recollection of appellant telling her of the April 1987 incident. The court further found that appellant, Crawford, and Valley View all operated under the assumption that the April 1987 incident was an aggravation of the September 1986 injury. There was nothing in appellant's conversation with Crawford that would indicate to them that she had a new and separate injury. The following testimony

from appellant's July 1992 deposition during litigation with Industrial indicates that the April 1987 incident was an aggravation of the existing condition that began in September 1986.

Q. There aren't any radicular findings in Dr. Fuhrman's records until after April of 1987. Do you agree with that assessment?

A. Well, the first time I was injured I had a burning sensation.

Q. Okay. Now on April 23, 1987, there is a note from Dr. Fuhrman that you had some new symptoms and new pain radiating down your leg. Would you have told him about new symptoms after the event in April 1987 when you were lifting the other lady?

A. I told him all the symptoms I had, even before.

Q. Okay. You wouldn't dispute his records that you had some new symptoms in April of 1987 though, would you?

A. I had all the pain from before [April 1987] and I told him.

Q. Uh-huh. Now, you wouldn't dispute his records, though, would you?

A. With the pains I would.

Q. Okay. Now, the event in April 1987, that involved a change in your condition, didn't it? It worsened your condition?

A. Yes

The July 1992 deposition was the first time appellant raised the issue of a new and separate injury. The court further found that medical evidence and appellant's own testimony failed to establish the April 1987 incident as a separate injury. The first notice Valley View received about the April 1987 incident being a separate

injury was in April 1993, when appellant filed a workers' compensation claim.

Appellant relies on two cases to support her contention that the statute should be tolled for the filing of her workers' compensation claim for the April 1987 incident. First, she points us to Frost v. Anaconda Company (1982), 198 Mont. 216, 645 P.2d 419. In Frost, the employee was injured on the job and disabled as a result. The employer offered its own compensation program to disabled salaried employees. This program offset workers' compensation and social security benefits against payment under the company program. The employee went on this program. After a few years of receiving benefits under this program, the insurance company temporarily terminated his benefits. He filed a workers' compensation claim to avoid having his benefits terminated in the future. The employee filed his claim three and one-half years after the statute tolled. This Court held that the one-year statute of limitations did not toll because the company paid compensation to the employee that was substantially similar to or greater than the benefits he would have received under a workers' compensation claim. Frost 645 P.2d at 422. The reasoning behind tolling the statute

> is to prevent an employer from lulling a claimant into a false sense of security by apparently acknowledging the validity of the claim, paying remuneration in lieu of compensation, and then invoking the statute after the lapse of one year.

Frost, 645 P.2d at 422 (citing Cupit v. Dancu Chemical Co. (Okla 1957), 316 P.2d 593 at 595).

Appellant next relies on Jaeger v. Stauffer Chemical Company (1982), 197 Mont. 263, 645 P.2d 942. In Jaeger, the employee injured his back at work. The company had a policy of keeping injured workers on light duty at full salary and the injured employee continued to work in that capacity. The employee was retired involuntarily in 1978 (for reasons unrelated to his injury) and filed for workers' compensation benefits after his six-month severance pay ended, more than two years after his injury. We held that the statute tolled because the payment of the employee's full salary amounted to compensation in light of his frequent and lengthy absences from work and his inability to perform his normal job duties. Jaeger, 645 P.2d at 946. We also held that an employer can avoid tolling the statute by notification to the employee of the necessity for filing a workers' compensation claim. Jaeger, 645 P.2d at 946.

Here, appellant argues that the statute should be tolled because she was receiving actual workers' compensation benefits under a prior claim, not just benefits that were substantially similar to workers' compensation benefits, as in Frost and Jaeger. Appellant states that she was lulled into a false sense of security when she began receiving benefits after the April 1987 conversation with Crawford. However, appellant's situation differs from Frost and Jaeger. Appellant was receiving workers' compensation

10

benefits, while _Frost_ and _Jaeger_ were receiving compensation from their employers in lieu of workers' compensation benefits. Additionally, appellant filed a workers' compensation claim for her September 1986 injury and began to receive workers' compensation benefits, while _Frost_ and _Jaeger_ never filed a workers' compensation claim until their employer-paid benefits were terminated. Appellant's employer did not offer her compensation in lieu of workers' compensation benefits. When appellant injured her back in September 1986, Valley View filed a workers' compensation claim and she received medical and temporary total disability benefits through workers' compensation. Valley View did nothing to lull appellant into a false sense of security. When appellant reported her September 1986 injury, Valley View followed the correct procedure in filing a workers' compensation claim for appellant and did not offer her an alternative compensation plan.

The time limits of §§ 39-71-601 and -603, MCA (1985), are mandatory. The purpose behind the notice requirement to employers is so the employer is able to investigate claims promptly and is protected from later claims. Larson v. Barry Smith Logging (1994), 267 Mont. 444, 448, 884 P.2d 786, 788-89 (citing Bender v. Roundup Mining Co. (1960), 138 Mont. 306, 312-13, 356 P.2d 469, 472). The burden of reporting injuries for workers' compensation claims rests on the employee. Grenz v. Fire and Casualty (1993), 260 Mont. 60, 64, 857 P.2d 730, 732. Appellant does not fit the exception of being lulled into failing to file a claim under _Frost_ and _Jaeger_.

11

Appellant failed to **meet** the statutory notice and filing requirements.

Appellant argues that Crawford was an ostensible agent of Valley View when it contacted her in April 1987 regarding her September 1986 injury.

The Workers' Compensation Court found that Crawford was not an agent of Valley View for purposes of workers' compensation claims. The court also found that Crawford was not an agent of Royal, Valley View's insurer as of January 1987. Further, Crawford was never employed by Valley View, and Valley View never engaged in any conduct from which appellant could infer that Crawford was its agent.

"An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent." Section 28-10-103, MCA. This belief must be reasonable. <u>Larson</u>, 884 P.2d at 788 (citing Bogle v. State Compensation Insurance Fund (1994), 264 Mont. 515, 519, 872 P.2d **800, 802).**

In the instant case, appellant could not reasonably believe that Crawford was Valley View's agent for the purpose of giving notice of her alleged 1987 workers' compensation **claim** Crawford's agent identified himself and began the discussion by specifically asking appellant about her 1986 injury. There was no reason for her to believe that her discussion with him about her 1986 injury, and her 1987 aggravation of the same injury, constituted the

12

required notice for the filing of a second workers' compensation claim. Appellant had been through Valley View's process before in September 1986 and understood that a Valley View accident report was the first step to filing a workers' compensation claim. Valley View did nothing that would have caused appellant to reasonably believe that Crawford was its agent for notification purposes of workers' compensation claims.

Appellant contends that Valley View should be equitably estopped from raising the statute of limitations defense because it created circumstances that caused appellant's failure to file a written workers' compensation claim within the statutory time limits.

Equitable estoppel applies when the employer or the insurer "has taken some positive action which either prevents claimant from making a claim or leads him to reasonably believe he need not file . . . a claim." Ricks v. Teslow Consolidated (1973), 162 Mont. 469, 481, 512 P.2d 1304, 1313. "[T]he party . . . to be estopped [must] have knowledge that he is misleading the claimant and an intention to mislead the claimant to his detriment." Ricks, 512 P.2d at 1313.

The Workers' Compensation Court found that Valley View did not meet the requirements of equitable estoppel and was entitled to raise the statute of limitations defense. Valley View did nothing to mislead appellant about the proper procedure required to make a workers' compensation claim. Appellant knew Valley View's

13

procedure.  Appellant had been through the procedure before when she filed her September 1986 claim.

We hold that there is substantial credible evidence to support the Workers' Compensation Court's findings and that it interpreted the law correctly.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14

August 4, 1995

<u>CERTIFICATE</u> OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

THOMAS C. BULMAN
P.O. BOX 8202
MISSOULA, MT 59807-8202

P. MARS SCOTT
MULRONEY, DELANEY & SCOTT
100 RYMAN
MISSOULA, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy